## Johns' Estate.

*Judgments—Revival—Scire facias "sued out" or "issued"—Failure of prothonotary to deliver writ to sheriff.*

A writ of scire facias to revive a judgment is not "sued out" or "issued" within the meaning of the Act of June 1, 1887, P. L. 289, when, in pursuance of a præcipe, the writ is prepared by the prothonotary, marked filed, indexed and docketed, but remains in the prothonotary's office and is never delivered to the sheriff for service, and such writ does not therefore continue the lien of a judgment. A writ is not "issued" or "sued out" until it passes from the hands of the prothonotary to the sheriff for service.

Argued Feb. 28, 1916.    Appeal, No. 362, Jan. T., 1915, by First National Bank of Gettysburg, Pa., from decree of C. P. Adams Co., April T., 1912, No. 22, opening confirmation of auditor's report in case of assigned estate of Emma C. Johns and S. L. Johns.    Before Brown, C. J., Mestrezat, Stewart, Moschzisker and Walling, JJ. Affirmed.

Rule to open confirmation of auditor's report.    Before Swope, P. J.

The facts appear by the opinion of the Supreme Court.

The lower court entered a decree opening the confirmation of the auditor's report and making a new distribution in favor of the Home Building and Loan Association of Hanover, holding the priority of lien of the judgment

of the First National Bank of Gettysburg lost and that the former's lien was prior thereto.    The First National Bank appealed.

*Error assigned,* among others, was the decree of the court.

*J. L. Williams* and *J. L. Butt,* for appellant.

*N. S. Heindel, John Reed Scott, John D. Keith* and *C. J. Delone,* for appellee.

OPINION BY MR. CHIEF JUSTICE BROWN, May 8, 1916:
On September 19, 1905, the First National Bank of Gettysburg entered a judgment in the Court of Common Pleas of Adams County for the sum of $5,000 against Emma C. Johns and S. L. Johns.    On February 7, 1907, the Home Building and Loan Association of Hanover entered a judgment in the same court against Emma C. Johns for the sum of $2,750.    On September 18, 1909, the bank, through its attorney, left a præcipe with the prothonotary of the county to revive its said judgment. That officer prepared a writ of scire facias, signed, sealed, filed and docketed it, but failed to deliver it to the sheriff. It never left the prothonotary's office.    On September 28, 1910, the bank, through its attorney, gave a præcipe to the prothonotary for a so-called alias scire facias to revive the said judgment.    This was placed in the sheriff's hands on October 3, 1910, and the defendants appeared and confessed judgment in favor of the plaintiff for the sum of $5,000.    Subsequently they made an assignment for the benefit of creditors, and, their assignee having filed his account, an auditor was appointed to make distribution of the funds in his hands, among which were the proceeds of the sale of the real estate of the assignors.    In making distribution, the auditor held that the judgment of the First National Bank of Gettysburg had been duly revived, and awarded it, as against the

Home Building and Loan Association of Hanover, the entire balance of the proceeds of the sale of said real estate. Exceptions to this report were sustained by the court below, which held that, with no delivery to the sheriff, or to any one for him, by mail or otherwise, of the writ of scire facias which had been made out by the prothonotary on September 18, 1909, and with no appearance on the part of the defendants, the said writ had not been sued out or issued within the meaning and intent of the Act of June 1, 1887, P. L. 289, and that the priority of the lien of the bank's judgment had not been continued as against that of the judgment of the building and loan association. On this appeal the question for determination is whether the writ of scire facias to revive the bank's judgment was "sued out" or "issued" within the meaning of the act of assembly, when, in pursuance of a præcipe, it had been prepared by the prothonotary, marked filed, indexed and docketed, but remained in the prothonotary's office and was never delivered to the sheriff for service.

To continue the lien of a judgment beyond five years from the date of its entry it must be revived during that period by agreement or by the "suing out" or "issuing" of a writ of scire facias. "All judgments entered in any court of record......shall continue a lien on the real estate of the defendant for the term of five years from the day of entry or revival thereof; and no judgment shall continue a lien on such real estate for a longer period than five years from the day on which such judgment may be entered or revived, unless revived, within that period, by agreement......or a writ of scire facias to revive the same be sued out within said period......; nor shall the revival of such judgment by......the issuing of a scire facias......have the effect of continuing such lien for a longer period than five years from the day on which it may be entered or revived, or such scire facias may have issued": Act of June 1, 1887, P. L. 289.

In the case under consideration there was no amicable

revival of the judgment of the First National Bank of Gettysburg against Emma C. and S. L. Johns, and the narrow question, as stated, is whether the writ of scire facias to revive it, which had been made out by the prothonotary, filed, docketed and indexed, but which never left his office, was sued out or issued within the meaning of these words as used in the statute.   This question does not seem to have been directly passed upon in any of our cases, but the correctness of the conclusion of the learned court below, that the writ of the bank had not been sued out or issued within five years from the date of the entry of its judgment, is evident upon a moment's reflection.   The word "issue," as defined in the Century dictionary, is "to send out."   In Webster's new International dictionary the definition of the word is "to send out," "to send out officially," as "to issue a writ."   The definition of "issue" in Worcester's dictionary is "to come or pass out," and that given by the Standard Dictionary of the English Language is "to send forth officially." These definitions are to be given to the word as used in the Act of 1887.   The mere preparation of the writ of scire facias, the filing of the same and docketing it were but necessary preliminaries to its being sued out: Hock's App., 1 Pitts. Rep. 325.   This is the only one of our cases which seems to hold that the mere preparation and filing of the writ are not the "suing out" of it, as a process to continue the lien of a judgment.   Nothing is to be found in any of our cases sustaining the contention of the appellant.   With its writ lying dead in the office of the prothonotary until more than five years had expired from the day its judgment was entered, it was as ineffectual to continue the lien of the same as if the prothonotary had never prepared it.   This is the simple situation, which cannot be made clearer by any extended discussion.   The writ to revive must actually go out, within five years, to someone with authority to serve it.   If not so sent out within that period, it becomes dead process in the hands of the official who retains it in his possession.

The writ in this case never went out to any one.   That it must actually go out and be placed in the hands of the sheriff, if it is to be regarded as sued out and issued, has been distinctly held in many jurisdictions.   In Johnson v. Farwell, 7 Me. 370, the question was whether the writ was actually sued out within six years after a trespass had been committed, so as to avoid the statute of limitations.   It was held that actions are "commenced and sued" when the writ is sued out and delivered to the sheriff or his deputy, or sent to either, with the bona fide intention of having the same served, and Chief Justice KENT was cited as holding that an action is commenced at the time of suing out the writ, and that good sense as well as truth on the subject concur that the writ issues when it is delivered to the sheriff or his deputy, or sent to either of them with a bona fide intention to be served on defendant.   "The suing out of a summons is the commencement of a suit, but the writ is not considered as legally sued out until it is delivered to the sheriff with authority to him to make service, or is transmitted to him for the purpose of being served.   The mere making out, signing and sealing of the summons by the clerk and delivery to plaintiff or his attorney is not a commencement of suit so as to save the bar of a limitation": Hekla Ins. Co. v. Schroeder, 9 Ill. 472.   "A writ of summons must be sued out.   It is not enough to make out the writ and leave it indefinitely in the clerk's office.   The writ must go out.   Certainly an order not sent out could not be regarded as one issued.......The mere writ, lying in the clerk's office, in no officer's hands who could enforce it, is not an issuing of an execution within the spirit and intent of the act": Burton v. Deleplain, 25 Mo. 376.   "There seems to be no question as to what is meant by suing out of a summons.   There is a uniformity of decision that the term is construed as meaning when the writ leaves the hands of the clerk to be delivered in good faith to the sheriff to be executed.   As was said in Ex parte Locke, 46 Ala. by PECK, C. J., the suing out of a

writ is the commencement of an action. A writ cannot be said to be sued out until it passes from the hands of the clerk to the sheriff to be executed": West v. Engle, 101 Ala. 509. To the foregoing authorities there may be added the following: Mills v. Corbett (N. Y.), 8 How. Prac. 500; Southern Ry. Co. v. Dickens, 163 Ala. 114; American Bridge Co. v. Wheeler, 35 Wash. 40; Bourn v. Robinson, 49 Texas Civil App. 157; Marshall v. Matson, 171 Ind. 238; Webster v. Sharpe, 116 N. C. 466; People, ex rel., v. Gebbardt, 154 Mich. 504; Howell v. Shepard, 48 Mich. 472; Pease v. Ritchie, 132 Ill. 638; Wilkins v. Worthen, 62 Ark. 401; Ross v. Luther, 4 Cowen 158; White v. Reed, 60 Mo. App. 380.

The writ of scire facias, issued at the instance of the appellant on September 28, 1910,—more than five years after the entry of its judgment—was unavailing to continue the priority of its lien over that of the judgment held by the appellee, and this is all that need be said of it. Decree affirmed and appeal dismissed at appellant's costs.