## Peeling v. Delaware, Lackawanna & Western R. R. Co.

*Reese, Morgan & Jackson*, for rule; *Duy & Hemingway*, for respondent.

EVANS, P. J., May 3, 1929.—This matter comes before the court on petition, answer and testimony taken before the court.

The prayer of the petition is for a rule on the prothonotary and plaintiff's counsel to show cause why the entry made on the docket and record of said proceeding, to wit, "Issued June 29, 1928," should not be changed and corrected so as to conform with the proper date when said summons was issued, to wit, Sept. 8, 1928, and that the number given said case be changed and corrected so as to conform with the number used on the date when said summons was actually issued.

This suit involves a claim for damages on account of fatal injuries sustained by Price M. Peeling, husband of the plaintiff, as a result of a truck which he was operating being struck by a train of the defendant company on its grade crossing east of the Danville State Hospital on July 2, 1927.

If the docket entries were to be changed and corrected, as defendant's counsel contend they should be, the record would disclose that the suit had been brought too late; that the plaintiff's suit was barred by the statute of limitations at the time the same was brought.

The suit was based on the Act of April 26, 1855, P. L. 309, which reads as follows:

"Section 1. The persons entitled to recover damages for any injury causing death shall be the husband, widow, children or parents of the deceased, and no other relative, and the sum recovered shall go to them in the proportion they would take his or her personal estate in case of intestacy, and that without liability to creditors.

"Section 2. The declaration shall state who are the parties entitled in such action; the action shall be brought within one year after the death and not thereafter."

From the pleadings and testimony, we find the following facts:

1. The plaintiff's husband was injured in a grade crossing accident on the defendant's railroad July 2, 1927, and, as a result of the injury received, died the same day, July 2, 1927.

2. The praecipe for the summons was filed June 29, 1928.

3. The same day the prothonotary, in obedience thereto, prepared a summons in trespass ready for delivery to the sheriff and placed the same in the vault among other papers.

4. The plaintiff's statement was filed Sept. 8, 1928.

5. The summons remained in the vault until Sept. 8, 1928, when the prothonotary delivered the same to the sheriff, together with a copy of the plaintiff's statement, for service.

6. The praecipe and summons were not numbered and docketed until Sept. 8, 1928.

7. The summons, together with a copy of plaintiff's statement, was served on the defendant Sept. 11, 1928.

In the light of these facts, was this suit brought within one year from the date of the death of the plaintiff's husband? These facts are not in dispute.

Section 2 of the Act of April 26, 1855, P. L. 309, states that, for injuries resulting in death, "the action shall be brought within one year after the death, and not thereafter."

The death of the plaintiff's husband occurred July 2, 1927. Was this suit brought within one year after his death? If so, it must have been brought on or before July 2, 1928.

When is a suit brought? What steps constitute the bringing of a suit? What must a plaintiff do in order to bring a suit within the meaning of section 2 of the Act of April 26, 1855, above quoted?

The plaintiff's counsel filed a praecipe for a summons in this case with the prothonotary June 29, 1928, and requested him to issue a summons and direct the sheriff not to serve the same until he had an opportunity to file a plaintiff's statement, which he would do in a day or two. The prothonotary marked the praecipe as of that date, June 29, 1928, and at once prepared a summons in trespass ready for delivery to the sheriff for service. He did not give the suit a number or make a docket entry or record of the same in the continuance docket, but placed the praecipe and summons, prepared as aforesaid, in the vault along with other papers. They remained there until Sept. 8, 1928, when plaintiff's counsel again appeared at the prothonotary's office and filed a plaintiff's statement, when it was discovered that the record did not show a suit had been brought. On the same day, Sept. 8, 1928, the prothonotary gave the suit a number, viz., No. 19½, October Term, 1928, and made a record thereof in the continuance docket and delivered the summons and a copy of plaintiff's statement to the sheriff for service, and he served the same on the defendant Sept. 11, 1928.

The suit was made returnable to the first day of the next, October, term of court, being the first Monday in October, 1928, and the rule to show cause why

the docket entries should not be changed and corrected, now for determination, was granted Oct. 5, 1928. There was no laches.

When the plaintiff's counsel appeared at the prothonotary's office Sept. 8, 1928, for the purpose of filing a plaintiff's statement, a search of the records failed to disclose that a suit had been brought or commenced. The question for determination is, therefore, a very narrow one: Was this suit brought or commenced on or before July 2, 1928?

In Johns' Estate, 253 Pa. 532, it is held: "A writ of *scire facias* to revive a judgment is not 'sued out' or 'issued' within the meaning of the Act of June 1, 1887, P. L. 289, when, in pursuance of a præcipe, the writ is prepared by the prothonotary, marked filed, indexed and docketed, but remains in the prothonotary's office and is never delivered to the sheriff for service, and such writ does not, therefore, continue the lien of a judgment. A writ is not 'issued' or 'sued out' until it passes from the hands of the prothonotary to the sheriff for service."

The contention of plaintiff's counsel is that the filing of the præcipe constituted the "initiation," the "commencing" or the "bringing" of the suit within the meaning and purview of section 2 of the Act of April 26, 1855, P. L. 309. With this contention we cannot agree.

An inspection of the records in the prothonotary's office should disclose whether a suit has been commenced or brought.

In the instant case it is true that a præcipe for summons in trespass had been filed with the prothonotary ordering and directing a summons to issue June 29, 1928, and that, in pursuance thereof, the prothonotary the same day prepared a summons ready for delivery to the sheriff for service and placed the same, together with the præcipe, in his vault. Both remained there until Sept. 8, 1928. They were neither indexed, docketed or given a number on the record. When plaintiff's counsel appeared at the prothonotary's office Sept. 8, 1928, for the purpose of filing the plaintiff's statement, a search of the records failed to disclose a suit had been commenced or brought. No record of a suit could be found. There was none. None had been made. There was no entry in the continuance docket of a suit having been brought or commenced by Mary Peeling against the Delaware, Lackawanna and Western Railroad Company. The summons was not indexed, docketed or delivered to the sheriff for service until Sept. 8, 1928, seventy-one days after the præcipe had been filed with the prothonotary. The plaintiff's counsel, on going to the prothonotary's office Sept. 8, 1928, for the purpose of filing a plaintiff's statement, searched the records in vain for a record of the suit. There was none. The record did not disclose a suit had been brought. No record of a suit existed.

The records of the proceedings of a court of record, made and kept pursuant to law, constitute the legal evidence of its judgments, orders and other proceedings: 15 Corpus Juris, 979.

The action begins, not with the date of the præcipe, but with the issuing of the summons or *capias*: Trickett's Penna. Law of Limitations, page 227; Bovaird & Seyfang Co. *v*. Ferguson, 215 Pa. 235.

A summons is not sued out until it passes from the hands of the clerk to the sheriff, or other proper officer, to be executed, or sent by mail or otherwise, with a *bona fide* unequivocal intention to have it served: 1 Corpus Juris, 1154, Note 35 *(A)*.

The general rule, except where it has been otherwise provided by statute, is that an action is commenced, so far as to stop the running of the statute of limitations, from the time the summons or other process is issued "in good faith," according to the language of some statutes, and the declaration when

filed relates back to the commencement of the suit and thereby prevents the running of the statute of limitations. A mere direction to the clerk to issue a summons, although as a matter of fact no summons is ever actually issued against defendant sought to be charged, is not a commencement of an action: 37 Corpus Juris, 1055.

In Johns' Estate, 253 Pa. 532, *supra*, at page 536, Mr. Chief Justice Brown, in speaking of a writ of *scire facias* to revive and continue the lien of a judgment, said: "That it (the writ) must actually go out and be placed in the hands of the sheriff if it is to be regarded as sued out and issued, has been distinctly held in many jurisdictions. In Johnson *v.* Farwell, 7 Me. 370, the question was whether the writ was actually sued out within six years after a trespass had been committed, so as to avoid the statute of limitations. It was held that actions are 'commenced and sued' when the writ is sued out and delivered to the sheriff or his deputy, or sent to either, with the *bona fide* intention of having the same served, and Chief Justice Kent was cited as holding that .an action is commenced at the time of suing out the writ and that good sense as well as truth on the subject concur that the writ issues when it is delivered to the sheriff or his deputy, or sent to either of them, with a *bona fide* intention to be served on defendant. 'The suing out of a summons is the commencement of a suit, but the writ is not considered as legally sued out until it is delivered to the sheriff with authority to him to make service, or is transmitted to him for the purpose of being served. The mere making out, signing and sealing of the summons by the clerk and delivery to plaintiff or his attorney is not a commencement of suit so as to save the bar of a limitation:' Hekla Ins. Co. *v.* Schroeder, 9 Ill. 472. 'A writ of summons must be sued out. It is not enough to make out the writ and leave it indefinitely in the clerk's office. The writ must go out. Certainly an order not sent out could not be regarded as one issued. . . . The mere writ, lying in the clerk's office, in no officer's hands who could enforce it, is not an issuing of an execution within the spirit and intent of the act:' Burton *v.* Deleplain, 25 Mo. 376. 'There seems to be no question as to what is meant by suing out of a summons. There is a uniformity of decision that the term is construed as meaning when the writ leaves 'the hands of the clerk to be delivered in good faith to the sheriff to be executed. As was said in Ex parte Locke, 46 Ala. 77, by Peck, C. J., the suing out of a writ is the commencement of an action. A writ cannot be said to be sued out until it passes from the hands of the clerk to the sheriff to be executed:' West *v.* Engle, 101 Ala. 509. To the foregoing authorities there may be added the following: Mills *v.* Corbett, 8 How. Prac. (N. Y.) 500; Southern Ry. Co. *v.* Dickens, 163 Ala. 114; American Bridge Co. *v.* Wheeler, 35 Wash. 40; Bourn *v.* Robinson, 49 Texas Civil App. 157; Marshall *v.* Matson, 171 Ind. 238; Webster *v.* Sharpe, 116 N. C. 466; People ex rel. *v.* Gebbardt, 154 Mich. 504; Howell *v.* Shepard, 48 Mich. 472; Pease *v.* Ritchie, 132 Ill. 638; Wilkins *v.* Worthen, 62 Ark. 401; Ross *v.* Luther, 4 Cowen, 158; White *v.* Reed, 60 Mo. App. 380."

In the light of these authorities and the undisputed facts in the case, we are of opinion the rule should be made absolute.

And now, May 3, 1929, the rule is made absolute, and it is ordered and decreed that the record in the instant case should be amended so as to read "Summons issued Sept. 8, 1928," the date on which the same was actually issued and delivered to the sheriff for service, and that the number given the case be changed and corrected so as to correspond with the number used on the date when the summons was actually issued on Sept. 8, 1928.

From R. S. Hemingway, Bloomsburg, Pa.